IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | No. 3:09-cr-00469-JO |
| Plaintiff-Respondent, | ) | (Civil No. 3:11-cv-70008-JO) |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| DARRICK SHANE HAABY, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |

Darrick Shane Haaby
Reg. No. 72333-065
Seagoville Federal Correctional Institution
Inmate Mail/Parcels
P. O. Box 9000
Seagoville, TX 75159

  Petitioner Pro Se

Gary Y. Sussman
UNITED STATES ATTORNEY'S OFFICE
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

  Of Attorneys for Respondent

JONES, Judge:

On May 11, 2011, pursuant to 28 U.S.C. § 2255, Darrick Haaby ("defendant") filed a motion (doc. #23) to vacate, set aside, or correct the sentence imposed in <u>United States v. Haaby</u>, Case No. 3:09-CR-00469-JO-1 (D. Or. Dec. 8, 2010). Upon careful review of the record in this case, the court concludes defendant's claims for relief lack merit, and that an evidentiary hearing is unnecessary because no facts have been alleged that would entitle defendant to relief. For the reasons set forth below, defendant's § 2255 motion is DENIED.

## BACKGROUND

Defendant stipulated to the following facts in his plea agreement and plea petition, which was signed on September 1, 2010. (Plea Petition with attached Plea Agreement (doc. #18)). Beginning on or about September 15, 2008, defendant began sending emails and instant messages to the victim, an eight-year-old girl, repeatedly expressing a desire to have sex with her. Defendant was aware of the victim's age, and repeatedly asked her to promise to have sex with him. Despite the victim expressly telling defendant that she did not want to have sex with him, defendant continued harassing the girl, asking her to promise to give her body to him, to let him "hump" her, and to let him take photographs of her body. Resorting to bribes, defendant offered the victim twenty dollars for her ninth birthday if she agreed to let him use his tongue on her. Even though the victim expressed reluctance, Haaby was undeterred; instead he reminded her of when she masturbated him in his bedroom, and asked her to masturbate him again.

A little over a year after the email correspondence began, the victim's step-father contacted law enforcement after discovering Haaby's sexually explicit correspondence with his step-daughter. Thereafter, an Immigration and Customs Enforcement ("ICE") agent assumed the

girl's online identity, assenting to Haaby's request to "hump" her for her ninth birthday. The day before his arrest, Haaby emailed the victim instructing her to wash her genitalia, to wear pants that could be easily removed, and stating that he would show the nine-year-old victim "how to wrap [her] vagina around [his] dick." (Plea Agreement (doc. #18) at 6.)

Eerily, on Halloween day in 2009, law enforcement agents arrested defendant when he arrived at the victim's residence, and discovered defendant's two-year-old son in the car, along with a digital camera and condoms. Following his arrest and Miranda warnings, defendant admitted to having sexual conversations with the victim; wanting to have oral sex with the victim; and sexually abusing the victim in the past. However, he claimed that he had a change of heart, and had abandoned his plans to sexually abuse the victim again, acknowledging that it would have been "a lot worse than the situation that I am in now" if his liaison had gone as planned. (Presentence Investigation Report ("PSR") at ¶ 27.) Haaby also admitted to possessing child pornography, which was later verified after a forensic examination of his home computer revealed thirty-eight video files containing such images, including images of sadistic conduct involving bound, prepubescent children. (PSR at ¶ 36.)

On September 2, 2010, Haaby pled guilty to Count Two of a three count indictment: online enticement of a minor in violation of 18 U.S.C. § 2422(b).[1] At his change of plea hearing,

---

[1] Defendant was also charged in Count One with a violation of 18 U.S.C. § 2241(c) (traveling in interstate commerce with the intent to engage in a sexual act with a person under 12); and in Count Three with a violation of 2252A(a)(5)(B) (possession of child pornography), which were dismissed at the time of sentencing. In addition, defendant was charged in State of Oregon v. Haaby, Washington County Circuit Court Case No. C0100141CR, with two counts of first degree sexual abuse and one count of attempted first degree sodomy. Defendant pled guilty to the state charges, and was sentenced in state court to 150 months of imprisonment to be run concurrently with the federal sentence imposed in this case.

3 - OPINION AND ORDER

defense counsel stated that, "I read out loud to him the plea agreement and the plea petition. We went through all the conditions together. He signed both those documents." (Transcript ("Tr.") (doc. #34) at 8:15-17.) Addressing Haaby to ensure that he was aware of the terms and consequences of entering a guilty plea, the court stated, "I want to make sure you understand all about this procedure . . . the propos[ed] agreement between the prosecution and the defense is 20 years' imprisonment." (Tr. at 10:11-19.) When the court read the charge, and asked if Haaby understood what he was pleading to, he replied, "Yes." (Tr. at 13:6-18.)

The court recognized, "You're obviously under distress from just being here and pleading guilty to a charge that's going to put you in prison for 20 years," ( Tr. at 14:11-13), and asked, "Then there's no pressure put on you to enter this plea[?]" Haaby replied, "No." (Tr. at 14:16-18.) Next, the court advised Haaby of his constitutional and statutory rights, asking, "[S]o you're waiving all those rights by entering this plea. Do you understand that?" (Tr. at 14:19-15:13.) Haaby said he did, so the court continued, "And do you so waive those rights?" The defendant answered, "[Y]es." (Tr. at 15:14-16.)

The court made it clear that a defendant's plea "has to be voluntary, and not under any threat or intimidation," recited the elements of the offense once more, and asked Haaby if that was a correct confession, to which defendant answered, "[Y]es." (Tr. at 19:3-15.) The court continued, "I'll then ask you, sir, of your own free will, how do you plead to this charge?" Defendant responded, "Guilty." (Tr. at 19:20-22.) Accordingly, the court found that the plea was "full and voluntary," and accepted defendant's plea of guilty. (Tr. at 19:23-24.) Because the plea was entered into pursuant to Fed. R. Crim. Pro. 11(c)(1)(C), the court was then bound to impose the stipulated sentence of 240 months (20 years) of imprisonment.

At sentencing, the court reviewed some of defendant's offense conduct, and noted: "Those are not mistakes. Those aren't stupid acts. Those are criminal acts. Those are intentional acts. Those are acts that you're inflicting upon an innocent person." (Sentencing Transcript (doc. #33) at 20:17-20.) The court continued, "I can look at your case without prejudice, without bias, and look at it from your point of view as a human being, and look at it as the damage you did to this child, and then try to impose what would be a fair -- a sentence that would protect children in our society." (Sentencing Tr. at 22-23.) After commenting that the evidence could have supported a more severe penalty, and after considering all of the facts in the record to justify the reasonableness of the sentence, this court sentenced Haaby to 240 months of imprisonment in accordance with the plea agreement.

On May 11, 2011, defendant Haaby filed this habeas motion pursuant to 28 U.S.C. § 2255, generally seeking relief from his sentence on the following grounds: (1) involuntary waiver of rights in the plea agreement; (2) ineffective assistance of counsel; (3) excessive sentence length; and (4) law enforcement misconduct.

## DISCUSSION

As a preliminary matter, Haaby specifically waived his statutory rights to appeal or collaterally attack his sentence in his plea agreement. Accordingly, the court's inquiry begins with whether defendant's waiver of his rights was valid.

A plea agreement waiving constitutional and statutory rights is valid if it is both voluntary and knowing. See Fed. R. Crim. P. 11(b). While a defendant can waive the right to collaterally attack his sentence pursuant to 28 U.S.C. § 2255, such a waiver does not categorically foreclose a defendant from bringing a § 2255 proceeding. United States v. Abarca, 985 F.2d 1012, 1014 (9th

Cir. 1993). Specifically, defendants who have waived their § 2255 rights can still challenge constitutional sentencing errors such as ineffective assistance of counsel ("IAC"), or involuntariness of waiver. Id. However, defendants seeking relief pursuant to § 2255 "cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding." United States v. McMullen, 98 F.3d 1155, 1157 (9th Cir. 1996).

Haaby alleges claims in Ground Two and Ground Three that could invalidate his waiver of rights, if found to have merit: involuntariness of waiver and ineffective assistance of counsel.

I.  **Involuntariness of Waiver**

   A.  **Legal Standard**

A waiver of appellate rights is voluntary if, "'under the totality of the circumstances, [it] was the product of a free and deliberate choice rather than coercion or improper inducement.'" United States v. Gonzalez-Melchor, 648 F.3d 959, 962 (9th Cir. 2011) (internal citation omitted). By corollary, a decision is involuntary if it was the consequence of duress or coercion. See Brady v. United States, 397 U.S. 742, 754 (1970). However, a guilty plea is not invalidated merely because it was entered to avoid a more severe sentence. Id. at 755.

The Supreme Court defined voluntariness in terms of appreciating the precise consequences of admitting guilt, and whether the defendant possessed competent mental faculties:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

Id. at 755. Moreover, the decision to plead guilty is often "heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." Id. at 756.

It follows that, "judgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time." Id. at 756-57. Thus, provided competent counsel and no prejudicial misconduct, pressure engendered by more severe penalties if convicted at trial does not invalidate an otherwise valid guilty plea. See id. at 758. This remains true even when defendants are motivated by a desire to avoid the most severe penalty, death. Id.

B. **Analysis**

Defendant claims that his waiver of rights was involuntary in his second ground for relief. Specifically, he alleges that he was, "coerced and scared into taking a plea deal . . . [that] was too harsh." (§ 2255 Motion at 6.) More likely, Haaby despaired at his Morton's Fork: choosing between the certainty of a binding plea agreement that stipulated to a twenty-year sentence, or going to trial and facing the risk of a thirty-year to life sentence does not seem like much of a choice. In essence, he now argues that his plea was coerced because of the lack of what he considered to be a meaningful choice between two unpleasant alternatives. The court reviewed in great detail the important constitutional and appellate rights that Haaby was waiving, reminded him of the seriousness of the consequences of entering a plea, and acknowledged the difficulty of the choices Haaby was making at his change of plea hearing. Nevertheless, after inquiring whether there was pressure put on him to enter the plea, Haaby replied, "No." (Tr. at 14:16-18.)

Haaby now contends that he should either have received a sentence of 10 years (120 months) for the offense of conviction, or been given a pardon because it was his first offense.[2] However, Haaby's argument for leniency ignores the fact that his current situation is the product of his intentional, antisocial, unlawful acts; the options available to him were limited by the consequences of his antecedent actions. Evidence in the record established that defendant attempted to entice a nine-year-old girl to engage in sexual acts with him; that he was relentless in his ongoing efforts; that defendant previously sexually abused the victim in this case as well as another minor female; that defendant was facing a potential mandatory minimum thirty-year sentence had the government elected not to dismiss Count One as part of the plea negotiations; and that defendant's computer contained child pornography. Haaby was free to decline the plea offer and go to trial. Of course in that event, he would have exposed himself to substantially greater criminal penalties.

If Haaby was convicted of all three counts at trial, 18 U.S.C. § 2241(c) carries a thirty-year statutory mandatory minimum sentence, which the court would be bound by operation of law to impose. In addition, 18 U.S.C. § 2422(b) carries a ten-year statutory mandatory minimum sentence, and 18 U.S.C. § 2251A(a)(5)(B) carries a maximum penalty of ten years of imprisonment. If the court exercised its discretion to impose the lowest sentence possible, by

---

[2] The court notes that defendant's § 2255 motion has called attention to a transcription error in the record. In the formal Judgment (doc. #21) and in the presentence report, the legal citation for the offense of conviction is incorrect. The offense of "Online Enticement of a Minor to Engage in a Sexual Act," is a violation of 18 U.S.C. § 2422(b), not 18 U.S.C. § 2252(a)(5)(B). It is clear from the Indictment, the plea petition, the plea agreement, and the colloquy at the change of plea hearing, that defendant entered a plea of guilty to a violation of § 2422(b), which carries a statutory maximum penalty of "life." Pursuant to Fed. R. Crim. Pro. 36, the court will correct this clerical error by issuing an Amended Judgment and Amended Statement of Reasons.

8 - OPINION AND ORDER

ordering that the terms of imprisonment run concurrently for all three counts, Haaby would have received a thirty-year sentence. However, if the court elected to impose consecutive sentences pursuant to 18 U.S.C. § 3584, Haaby would have received a statutory mandatory minimum of forty years of imprisonment, plus up to ten additional years for Count Three, for a possible federal sentence of fifty years. If the court ordered the federal sentence to run consecutively to the 150-month term of imprisonment imposed by the state court, Haaby would potentially be serving a sentence of 750 months of imprisonment, rather than the 240 months of imprisonment guaranteed by the plea agreement pursuant to Fed. R. Crim. Pro. 11(c)(1)(C).

Presented with these alternative scenarios, defendant knowingly and voluntarily made his choice to accept the terms of the plea agreement and avoid a trial. His counsel affirmed that, "[d]ue to the overwhelming evidence against Haaby--emails sent from his computer, the contraband seized during the search of his person and his computer, his confession to the arresting officers, and potential testimony from the victim--he repeatedly told [defense counsel] he did not want to go to trial." (Gov. Resp. to § 2255 Mot. (doc. #32), Exh. C (Affidavit of Counsel) at 6.) The court carefully reviewed the terms of the plea agreement with the defendant, including the statutory maximum penalty of "life," so it was made abundantly clear that agreeing to a twenty-year sentence that would result in a global resolution of all pending state and federal charges was indeed a favorable result. Haaby affirmed at his change of plea hearing that his confession to the conduct underlying the offense was correct, and that he pleaded guilty of his own free will. (Tr. at 19.) While he may not have liked his choices, the choice to plead guilty was his to freely make.

As was the case in Brady, this court has "no reason to doubt that [defendant's] solemn admission of guilt was truthful." 397 U.S. at 758. The fear of more severe criminal penalties, standing alone, is insufficient to invalidate an otherwise voluntary and intelligent guilty plea. See Brady, 397 U.S. 755. Considering the totality of the circumstances, there is no evidence of coercion or improper influence, and I find that Haaby's plea was the product of a "free and deliberate choice." See Gonzalez-Melchor, 648 F.3d at 962. As discussed below, the court finds no merit in either of Haaby's claims of ineffective assistance of counsel. Because the plea was made freely and intelligently, with the assistance of competent counsel, the court finds no merit in defendant's involuntariness of waiver claim. See Brady, 397 U.S. at 754-56.

## II.     Ineffective Assistance of Counsel

### A.     Legal Standard

Haaby does not dispute his guilt; instead, he "believe[s] [his] attorney didn't fight hard enough for [him]." (§ 2255 Motion at 6.) There is no question that defendants have a Sixth Amendment right to counsel during the plea-bargaining process, and that they are entitled to the effective assistance of competent counsel during plea negotiations. Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). To establish ineffective assistance of counsel, defendants must show that (1) their legal representation was so maligned it amounted to a denial of their Sixth Amendment right to counsel; and (2) there is a reasonable probability that the "deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984); accord United States v. Withers, 618 F.3d 1008, 1019 (9th Cir. 2010). The two-part Strickland test applies to challenges to guilty pleas based on ineffective assistance of counsel. Hill v. Lockhart, 474 U.S. 52, 57 (1985). Regarding the first prong of the Strickland test, "the defendant must

10 - OPINION AND ORDER

show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688; accord Withers, 618 F.3d at 1019. Regarding the second prong, a "reasonable probability" in this analysis means "a probability sufficient to undermine confidence in the outcome." Matylinsky v. Budge, 577 F.3d 1083, 1091 (9th Cir. 2009) (quoting Strickland, 466 U.S. at 694).

Judicial inquiry into counsel's performance "must be highly deferential," and strategic choices as to how to defend a case are "virtually unchallengeable." Strickland, 466 U.S. at 689, 691. Consequently, "a plea's validity may not be collaterally attacked merely because the defendant made what turned out, in retrospect, to be a poor deal." Bradshaw v. Stumpf, 545 U.S. 175, 186 (2005). Rather, the validity of a plea deal is called into question only if the defendant demonstrates either (1) "that he made the unfavorable plea on the constitutionally defective advice of counsel"; or (2) that he "could not have understood the terms of the plea bargain." Id.

In the context of a defendant convicted pursuant to a guilty plea, "constitutionally defective advice of counsel" reflects whether the advice in question was "within the range of competence demanded of attorneys in criminal cases." Tollett v. Henderson, 411 U.S. 258, 266 (1973) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). In Tollett, the Supreme Court described the competence of attorneys in criminal cases:

> The principal value of counsel to the accused in a criminal prosecution often does not lie in counsel's ability to recite a list of possible defenses in the abstract, nor in his ability, if time permitted, to amass a large quantum of factual data and inform the defendant of it. Counsel's concern is the faithful representation of the interest of his client and such representation frequently involves highly practical considerations as well as specialized knowledge of the law. Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, or by contesting all guilt. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence

11 - OPINION AND ORDER

against the accused are considerations that might well suggest the advisability of a guilty plea.

Id. at 267-68 (citations omitted). Ultimately, "it is difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. 259, 288 (2000).

B. **Analysis**

Defendant generally alleges in his second and third grounds for relief that defense counsel rendered ineffective assistance during the plea bargaining process, during the entry of the guilty plea, and apparently during the presentence investigation process as well. Specifically, Haaby's second ground for relief claims, "I was coerced and scared into taking a plea deal that I feel was too harsh. I believe my attorney didn't fight hard enough for me and let the prosecutor walk all over him and me as well." (§ 2255 Motion at 6.) Defendant's third ground for relief alleges that his attorney "failed to introduce or include vital information that may have helped my case. He didn't follow through on certain things he mentioned he would do for me, (ie [sic] take polygraph, find certain person who victimized me, use certain reports to help my case)." Id. at 8.

With respect to Haaby's claim in Ground Two, that his attorney was not aggressive enough, there is nothing in the record suggesting that defense counsel's performance fell below an objective standard of reasonableness in any way, or that he rendered "constitutionally defective" advice. It is undisputed that Haaby understood the terms of the plea bargain. The extremely detailed and carefully drafted plea agreement that was presented to the court on September 2, 2012, was obviously the product of extensive negotiations between the parties, and because the plea agreement bound the court to impose a stipulated sentence of 240 months, I considered whether the recommendations were reasonable before agreeing to accept the plea. I

noted during the change of plea hearing that defendant had "the most able counsel that exists on both sides . . . [and] I highly respect their opinion of the case." (Tr. 10:22-24.) Given the egregious facts of this case, aggressive negotiation tactics would likely have prejudiced the defense; counsel's highly professional demeanor was ultimately effective in achieving the best result he could for his client.

As discussed in detail above, Haaby was facing federal charges that carried a statutory maximum term of "life," and if he was convicted by a jury of all three counts of the indictment–which was likely given the overwhelming evidence against him–he would have been facing a statutory mandatory minimum sentence of thirty years (360 months), and a possibility of a sentence of sixty-two and a half years (750 months) if the all of the state and federal charges were ordered to run consecutively. Defense counsel negotiated to have defendant's federal sentence run concurrently with his 150-month state sentence, so that he would serve only twenty years (240 months) for all of the conduct related to the offense, which is less than one-third of the potential term of imprisonment. Whether viewed as a guaranteed sentencing reduction of 10 years, or protection from exposure to a life sentence, the plea agreement was a reasonable compromise, and the stipulated sentence was far from "too harsh." Accordingly, the court concludes that defense counsel's performance falls well within the acceptable range of competence, and defendant's allegations in Ground Two are without merit.

Defendant alleges in Ground Three that defense counsel's representation was deficient because he did not have the defendant undergo a polygraph examination; he did not find the individual who allegedly sexually victimized the defendant; and he did not use a report written

by the defense's retained psychiatric expert. Once again, the inquiry is whether the conduct in question amounts to constitutionally deficient assistance of counsel.

Defense counsel explained that, "the issue of a polygraph was never addressed as Mr. Haaby never denied the conduct alleged. In fact, he admitted it in the change of plea allocution." (Gov. Resp. to § 2255 Mot., Exh. C (Affidavit of Counsel) at 5.) Regarding Haaby's request that defense counsel find the individual who sexually abused him as a young boy, defense counsel assigned a Federal Defender Investigator to attempt to locate the individual. Id. Defense counsel reported that the search was unsuccessful; "As over 25 years had passed since the incident, we were unable to find any record of the name Mr. Haaby had given us." Id. Finally, regarding the report written by the psychiatric sex offender expert, defense counsel reviewed the report with Haaby and they both agreed that the report should not be shared with the government or the court because the report "would not be helpful and quite possibly damaging to his case." Id. at 6.

None of the strategic choices made by defense counsel fall outside the range of acceptable practice for criminal attorneys; therefore, I conclude that defense counsel's assistance and advice at all phases of the plea and sentencing process was sufficient to protect Haaby's Sixth Amendment right to competent counsel. Assuming, *arguendo,* that Haaby had been able to identify some incompetent conduct, he still failed to identify any prejudice to his defense. See Strickland, 466 U.S. at 688; Withers, 618 F.3d at 1017. The facts in this case show that, far from a "poor plea deal" engendered by constitutionally deficient counsel, Haaby was fully aware of the terms and consequences of his plea, and the plea agreement exposed him to substantially less severe sanctions than he would have faced had he proceeded to trial. See Bradshaw, 545 U.S. at

186. Accordingly, the court finds no merit to defendant's ineffective assistance of counsel claim in Ground Three.

## III. Remaining Grounds for Relief

### A. Legal Standard

"Collateral attack pursuant to a statutory provision is . . . subject to a knowing and voluntary waiver." United States v. Leniear, 574 F.3d 668, 672 (9th Cir. 2009) (citing Abarca, 985 F.2d at 1014). "The right of appeal, as we presently know it in criminal cases, is purely a creature of statute." Abney v. United States, 431 U.S. 651, 656 (1977). Subsequently, "a § 2255 petitioner cannot challenge nonconstitutional sentencing errors if such errors were not challenged in an earlier proceeding. . . . Petitioners waive the right to object in collateral proceedings unless they make a proper objection before the district court." United States v. McMullen, 98 F.3d 1155, 1157 (9th Cir. 1996). Finally, "'[t]he scope of a knowing and voluntary waiver is demonstrated by the express language of the plea agreement.'" Leniear, 574 F.3d at 672 (quoting United States v. Anglin, 215 F.3d 1064, 1066 (9th Cir. 2000)).

### B. Analysis

Because the court has determined that defendant's plea is free from any defects that would render it invalid, and has concluded that defendant's waiver of the right to appeal or collaterally attack the sentence was knowing and voluntary, his § 2255 motion is barred by the terms of the plea agreement unless the grounds alleged fall within one of the specific exceptions to the waiver. Haaby's plea agreement states, in relevant part:

> **Waiver of Appeal/Post-Conviction Relief:** Defendant knowingly and voluntarily waives the right to appeal from any aspect of the conviction and sentence on any grounds unless (1) the sentence imposed exceeds the statutory maximum, or (2)

> the court imposes a sentence which exceeds the agreed-upon sentence set forth
> herein. Should defendant seek an appeal, despite this waiver, the USAO may take
> any position on any issue on appeal. Defendant also waives the right to file any
> collateral attack, including a motion under 28 U.S.C. § 2255, challenging any
> aspect of the conviction or sentence on any grounds, except on the ground of
> ineffective assistance of counsel, and except as provided in Fed. R. Crim. P. 33
> and 18 U.S.C. § 3582(c)(2).

(Plea Agreement (doc. #18) at p. 4, ¶12.) Defendant pled guilty to violating 18 U.S.C. § 2422(b), which carries a statutory mandatory minimum term of 10 years, and a maximum term of life; therefore, defendant's twenty-year (240 month) sentence falls within the statutory sentencing range, and is the agreed-upon term of incarceration specified in the plea agreement. Federal Rule of Criminal Procedure 33 pertains to new trials, and therefore is inapplicable in this case. Finally, 18 U.S.C. § 3582(c)(2) does not apply, because the sentencing range that applies to defendant's offense of conviction has not decreased. The only possible remaining avenue for defendant to collaterally attack his sentence would be to raise a nonconstitutional error that prejudiced his defense, see McMullen, 98 F.3d at 1157; however, the language of the plea agreement could not be more clear that defendant waived the right to file "_any_ collateral attack . . . challenging _any_ aspect of the conviction or sentence on _any_ grounds."

Defendant's first ground for relief challenges the upward sentencing departure that the parties stipulated to in the plea agreement, and seeks a lower sentence. This claim is barred by the terms of the waiver in the plea agreement, and in any event is without merit for the reasons discussed above.

Defendant's fourth ground for relief accuses law enforcement agents of "twist[ing] things [defendant] said around and embellish[ing] things to keep [defendant] locked up instead of releasing [him] on [his] own recognizance." (§ 2255 Motion at 9.) Again, this claim is barred by

16 - OPINION AND ORDER

the terms of the waiver in the plea agreement, and also by the holding in McMullen, given that defendant never raised any concerns or objections at any of the prior court proceedings. Even if the claim was not barred, it is without merit. There is no credible evidence in the record of any misconduct on the part of the law enforcement officers associated with the case. Haaby never denied the statements he made to the arresting agents. (Gov. Resp. to § 2255 Mot., Exh. C (Affidavit of Counsel) at 6.) Moreover, Haaby's statements were made after he received his Miranda warnings, and were corroborated by his email correspondence with the nine-year old girl he victimized. Defense counsel concluded that there was no basis to suppress either the email traffic, or the self-incriminating statements made after his arrest. Id. Accordingly, Ground Four is denied.

## CONCLUSION

Construing the § 2255 motion in a manner most favorable to the *pro se* defendant, the court identified four claims for relief: (1) involuntary waiver of rights in the plea agreement; (2) ineffective assistance of counsel; (3) excessive sentence length; and (4) law enforcement misconduct. To the extent that defendant alleges in Ground Two that the plea agreement he entered into is invalid because he was coerced and because defense counsel rendered ineffective assistance, the claim lacks support in the factual record, and is without a basis in law, and accordingly is denied. Having concluded that defense counsel's assistance and advice at all phases of the plea and sentencing process was sufficient to protect Haaby's Sixth Amendment right to competent counsel, I find that the ineffective assistance of counsel claims raised in Ground Two and Ground Three lack merit, and are denied.

Defendant's waiver of the rights to appeal or collaterally attack the sentence was knowing and voluntary; therefore, because his § 2255 motion fails to allege any other grounds for relief that fall within the specific exceptions to the waiver, his claim in Ground One that his sentence was excessive, and his claim in Ground Four that law enforcement officers committed misconduct are barred by the terms of the plea agreement, are without merit, and are accordingly denied.

Defendant's request for an evidentiary hearing is DENIED. Further, having concluded that each of the four grounds in the petition are either barred or lack merit, petitioner's Motion to Vacate, Set Aside, or Correct Judgment Pursuant to 28 U.S.C. § 2255 (doc. # 23) is DENIED. Pending motions, if any, are DENIED AS MOOT.

The court declines to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

IT IS SO ORDERED.

DATED this 15th day of May, 2012.

_____
ROBERT E. JONES
U.S. District Judge